Decided October 21, 1895.

HIBERNIAN BENEVOLENT SOCIETY v. KELLY.

[42 Pac. 3; 30 L. R. A. 167.]

1. WHAT IS A CHARITABLE INSTITUTION*—CONSTITUTION, ARTICLE IX, § 1—CODE, § 2732, SUBDIVISION 3.—To constitute a benevolent corporation a "charitable" one within the meaning of article IX, § 1 of the state contitution, and section 2732, Hill's Code, exempting from taxation certain property of "charitable institutions," it is not necessary that its benefits be extended to needy persons generally without regard to the relation the recipient may bear to the society or to dues or fees paid; but it is still "charitable" though it restricts its benefactions to its own members and their families.

2. WHAT PROPERTY OF CHARITABLE INSTITUTIONS IS EXEMPT FROM TAXATION—CODE, § 2732, SUBDIVISION 3.—Under subdivision 3 of section 2732, Hill's Code, which provides that "such real estate belonging to charitable institutions as shall be actually occupied for the purposes for which they were incorporated" shall be exempt from taxation, a building owned by a charitable institution, only part of which is occupied for the purposes of the institution, is not exempt, though the revenues derived from the use of the remainder of the building are devoted to the objects of the institution; under this section the test of the exemption is the use of the property itself, and not the

*Many examples of what have been held to be charities are cited and discussed in the following cases and the notes appended to them: Fire Insurance Patrol v. Boyd (Pa.), 1 L. R. A. 417, 6 Am. St. 745; Cottman v. Grace (N. Y.), 3 L. R. A. 147; Bullard v. Chandler (Mass.), 5 L. R. A. 106; Pennoyer v. Wadhams, 20 Or. 274, 11 L. R. A. 210; Crearer v. Williams (Ill.), 21 L. R. A. 454; Sears v. Chapman (Mass.), 35 Am. St. 502. In the case of Philadelphia v. Masonic Home, 160 Pa. St. 572, (23 L. R. A. 545, 40 Am. St. 736,) it was held that a home open only to aged and indigent members of the Masonic order is not a "purely public" charity within the meaning of those words in a constitutional provision for exempting property from taxation. For a collection of cases deciding what are not public charities, see note to Stratton v. Physio-Medical Institute (Mass.), 5 L. R. A. 37.—REPORTER.

application of the income derived from it.* In such cases .the assessor should so value the property that the tax will really be paid by the unexempt part, though the assessment may run against it all.

3. ESTOPPEL AGAINST TAXATION.—A municipality is not estopped from levying a tax on certain property by the fact that it had omitted to assess such property in previous years.

4. INJUNCTION AGAINST COLLECTING TAXES.†— An injunction will not be granted to restrain the collection of a tax merely because of an inaccuracy on the assessment roll in the name of the owner, as, for example, the use of "Hibernian Benevolent Society" for "Portland Hibernian Benevolent Society": *Welch* v. *Clatsop County*, 24 Or. 457, cited and approved.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

The Portland Hibernian Benevolent Society, a corporation organized under the statute providing for the incorporation of churches, religious, benevolent, literary, and charitable institutions, brought this suit to restrain the sheriff of Multnomah County from enforcing the collection of taxes levied upon its property for state and county purposes for the year eighteen hundred and ninety-two, claiming that such property is exempt from taxation under the constitution and laws of the state. From the agreed statement of facts it appears that plaintiff was incorporated in eighteen hundred and seventy-three. Its constitution declares that "The objects of this society shall be charity and benevolence, for the purpose of contributing a weekly. allowance for sickness, and the means of defraying the expenses consequent upon the death of a member, and to contribute for the above-named purposes such

---

*With the case of *Book Agents of the Methodist Episcopal Church South* v. *Hinton* (Tenn.), 19 L. R. A. 289, is an extended note collecting and classifying a large number of authorities on the effect on the right to exemption from taxation of using the property of a religious, charitable, or educational institution for secular business or for revenue. See also the case of *American Sunday School Union* v. *Taylor* (Pa.), 23 L. R. A. 695.— REPORTER.

† The right to an injunction to prevent collecting illegal taxes is the subject of an extensive note to *Odin* v. *Woodruff* (Fla.), 22 L. R. A. 699.— REPORTER.

sums as a majority of the members may be pleased to contribute." It is further provided by its constitution and bylaws that "every Irishman, or the son of an Irishman, or a son of a member of the society," between the ages of eighteen and forty-five years, "of good moral character, possessed of reputable means of support, and free from all infirmities that might render him burdensome to the society," and a resident of the City of Portland for sixty days preceding his application, may, upon first being duly elected, "become a member thereof by signing the constitution and paying an initiation fee of five dollars." Every person who has been a member of the society for six months, and whose name is on the "list of active members," is entitled, in case of sickness, "to receive such sum as the society may direct, not to exceed seven dollars per week, for three months in succession," provided he furnishes a doctor's certificate that through sickness he is confined to his bed, and that he has not been instrumental in causing his sickness. In addition to this allowance, the society may extend benevolence to sick members as it may deem necessary, to be decided by a two thirds' vote of the members present at any regular meeting. On the death of a member in good standing a sum of money not less than twenty-five dollars nor more than seventy-five dollars is to be paid for funeral expenses, and his widow or orphans receive twenty-five dollars, and, if need be, in three months thereafter, a like sum. Upon the death of his wife, a member is entitled to receive the sum of forty dollars for funeral expenses. If there is no money in the treasury for sick or funeral expenses when required, the board of directors is authorized to levy a special tax on the members for that purpose, and no other. It is provided that no money shall be

drawn from the treasury for any but benevolent purposes, and none of the income or revenue of the society is to be used for any purpose other than as set out in the constitution, except for the payment of principal and interest on its indebtedness, and the purchase and improvement of real estate. Provision is also made for the appointment of a committee of three members, whose duty it shall be, when notified of the illness of a member, to visit him as often as convenient, and report from time to time to the board of managers the condition of the member, lest sick dues might be drawn from the treasury contrary to the constitution. The property assessed consists of lot one, block one hundred and seventy-seven, in the City of Portland, upon which is erected a three-story brick building, the lower story of which is rented for stores, the second story for offices, (except one room which is occupied by the plaintiff,) and the third story for a public hall, the revenue derived from such rental being exclusively devoted to the objects and purposes of the society. Upon these facts the court below found that plaintiff was a charitable institution within the meaning of the exemption law, and that the property in question was actually occupied by the plaintiff for the purposes for which it was incorporated, although the greater part of the building was leased to sundry persons to be used for purposes wholly unconnected with the society, and entered a decree enjoining the collection of the tax. From this decree the defendant appeals.                      REVERSED.

For appellant there was an oral argument by *Mr. John H. Hall,* and a brief by *Mr. Hall* and *Mr. Wilson T. Hume,* district attorney, to this effect.

Plaintiff is not a charitable institution within the meaning of section 1, article IX of the constitution of Oregon, or of subdivision 3 of section 2732 of Hill's Code. A charitable institution within the meaning of the law is held to mean a public charity—one whose benefits are extended to needy persons generally without regard to their relation to the members of the society or to the fees paid: 2 Am. and Eng. Ency. of Law, 174; *City of Bangor* v. *Rising Virtue Lodge, Number Ten, Free and Accepted Masons,* 73 Me. 429 (40 Am. Rep. 369); *Morning Star Lodge* v. *Hayship,* 23 Ohio St. 144; *Gorman* v. *Russell,* 14 Cal. 535; *Donohugh's Appeal,* 86 Pa. St. 306; *Delaware County Institute of Science* v. *Delaware County,* 94 Pa. St. 163; *State* v. *City of Indianapolis,* 69 Ind. 375 (35 Am. Rep. 223); *Babb* v. *Reed,* 5 Rawle (Pa.), 158 (28 Am. Dec. 650).

Plaintiff admits in the pleadings that it is the owner of the property assessed; that the assessment does not exceed the value thereof, and that plaintiff occupies but one room in the large three-story brick building which constitutes the improvements thereon, and also admit by their stipulation that the remainder of the building is rented out for stores, offices, and public halls; that the proceeds arising therefrom are turned into its treasury and used for the benefit of the members only. It also appears from article II of the constitution in evidence that only "Irishmen, or sons of Irishmen, of good moral character, free from all infirmities that might render them burdensome to the society, and possessed of some known reputable means of support," are eligible to become members and share in its benevolence, and even he must be balloted upon, and, if elected, must pay an initiation fee of five dollars, and if taken sick must wait six months ere he

23 OR.—12.

can obtain relief from the society. This is merely a plan of insurance or a species of mutual benefit societies wherein the member, while in good health and possessed of worldly goods, seeks to provide himself against reverses and adversities that may befall him in after life, by, in common with others, providing a fund, through initiation fees, dues, etc., upon which to draw when the chilling blasts of penury, coupled with disease and old age, assail him. But this cannot interest those who were so unfortunate as not to be born an "Irishman, or a son of an Irishman," because they are excluded from entering this society of benevolence and participating in its bounty, and might sit upon the steps of plaintiff's massive three-story brick building "crying for bread" and would "receive a stone," for by the constitution of the plaintiff no charity could be disbursed to them and they would have to seek alms elsewhere. Plaintiff does not even represent one entire class of persons; in the first place they must be Irishmen or sons of Irishmen, and even were a person fortunate enough to be in one of these categories, he must still be able-bodied and able to earn his living, and also must be a capitalist to some extent and satisfy the plaintiff that he is not likely to be in need of charity. And though he possess all these, he must still run the gauntlet of being rejected if five members of plaintiff's society should blackball him. So it appears that not only are the poor and needy, the lame, the halt, the sick, and the blind excluded, but also the unpopular among their brethren are also forbidden to enter and enjoy the benevolence of plaintiff. This is not charity within the meaning of our constitution. This does not relieve the public of the burden of caring for the needy poor, which is the consideration upon which charitable societies are exempted

from taxation; that the state is relieved from the burden and expense of caring for the needy poor within her borders by virtue of these benevolent societies taking them in hand and supplying their wants and necessities.    But in order that a society may be deemed charitable it must be a public charity; that is, must extend charity to all upon the same conditions, or all of a certain class, as all of the needy poor of a city or town or county, or to all of a sex or color, etc. These are the only kinds of classes that are recognized by the courts.    The Odd Fellows, Masons, Knights of Pythias, and many other secret organizations are charitable to their members, but this is not a charity within the meaning of the word as used in the constitution.    Their doors are closed against all the world except their own members, whom they choose by ballot, and no good reason can be given why they should be exempted from bearing their proportion of the public burden, instead of compelling their fellow man to assume a heavier burden and higher tax than he would have to bear were they not exempted.

We also contend that where a portion of a building is used for commercial purposes, that is, rented or leased to other parties for gain, although the entire proceeds may be used for the purposes for which the society was organized, it cannot be exempted from taxation as property devoted to a charitable use: *Trustees of Methodist Episcopal Church* v. *Ellis,* 38 Ind. 3; *Orr* v. *Baker,* 4 Ind. 86; *American Sunday School Union* v. *Taylor,* 161 Penn. 307 (23 L. R. A. 695); *Pierce* v. *Cambridge,* 2 Cush. (Mass.), 611; *Proprietors of the South Congregational Meeting-house in Lowell* v. *City of Lowell,* 1 Metc. 538; *Old South Society* v. *Boston,* 127 Mass. 378; *County Commissioners of Frederick County* v. *Sisters of Charity of St. Joseph,* 48 Md. 34; *The Appeal Tax Court of Baltimore City* v. *The*

*Grand Lodge of Ancient Free and Accepted Masons of Maryland,* 50 Md. 421; *The Appeal Tax Court of Baltimore City* v. *St. Peter's Academy,* 50 Md. 321; *Wyman* v. *City of St. Louis,* 17 Mo. 335; *Young Men's Christian Association of New York* v. *Mayor of New York,* 113 N. Y. 187; *The Connecticut Spiritualist Camp-meeting Association* v. *The Town of East Lyme,* 54 Conn. 152; *Cincinnati College* v. *State,* 19 Ohio, 113.

If your honorable court should determine that plaintiff's corporation is a charitable institution within the meaning of the law, we still most earnestly contend that it is not exempted from taxation by the laws of the state. The history of the exemption law (section 2732, Hill's Code,) under which plaintiff claims, is, that it was passed in exactly the same form as it now stands in eighteen hundred and fifty-four by the territorial legislature, (see section 4, title I, chapter I, page 431, Statutes of Oregon of 1855,) which legislature was working under the organic laws of Oregon of eighteen hundred and forty-five, which placed no limitations upon the legislature in exempting property from taxation. Said section reads as follows: "Section 4. The following property shall be exempt from taxation ＊ ＊ ＊. The personal property of all literary, benevolent, charitable, and scientific institutions, incorporated within this territory, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated." In eighteen hundred and fifty-nine the present constitution of the state was adopted by the people of the state, which contains the following clause relating to the power of the legislature in the exemption of property from taxation: "Section 1, article IX. The legislative assembly shall provide by law for such uniform and equal rate

of assessment and taxation as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes as may be specially exempted by law." In the compilation of the laws of Oregon in eighteen hundred and sixty-four, Hon. M. P. Deady copied the act of eighteen hundred and fifty-four, above quoted, *verbatim,* with the exception that without apparent authority he eliminated the word "territory" and substituted the word "state" therefor. See section 4, title I, chapter LIII, General Laws of Oregon, 1845–1864. The same act was again copied into the statutes of eighteen hundred and seventy-two, and again in Hill's Code in eighteen hundred and eighty-seven.

Our contention is: that the terms of the section of the constitution above cited require that in order that a charitable or religious society may be exempted from taxation in this state it must apply to the sovereign, or taxing power, *i. e.* the legislature, and obtain the passage of a special act exempting it alone from taxation. This was the evident intention of the framers of the constitution, and was inserted to correct a then existing evil. The legislative assembly of eighteen hundred and fifty-four had already passed a general act exempting such institutions from taxation, which is the same law that is in force now, never having been reënacted or amended in any way, and it was to remedy this that the above clause of the constitution was framed. If the framers of the constitution had intended that the therein enumerated institutions should be exempted by a general law such as was then in force, then the word "specially" has no office or meaning in the clause, for, as the court will observe, if the word "specially" is eliminated therefrom, then the con-

struction which counsel for respondent claims should be put upon this section would be the only logical one; but in construing statutes, and particularly a constitution, every word should be given an office and a meaning. They are not presumed to have been inserted for mere euphony, and must be presumed to have been employed in their natural and ordinary meaning: Cooley's Constitutional Limitations (4th ed.), 71–72; *District Township of the City of Dubuque* v. *City of Dubuque,* 7 Iowa, 275.

As before stated, the present law, unchanged, was in force at the time of the meeting of the constitutional convention and had been tried for three years, and the framers thereof, perceiving the evil and abuse that was sure to grow out of the then existing system, wisely set about to remedy the evil by requiring the societies, benevolent or otherwise, to apply to the legislative assembly for their exemption. Under our statute there is no person to whom the people have delegated the right or authority to say what is or what is not a charitable society. The assessor may assume it, but he does so without authority of law. It seems very clear to us that the evil was plain, and the remedy provided by the constitution was the proper one, and time has amply justified the fears of the constitutional framers, for in Multnomah County alone there is exempted each year by the assessor over two million dollars' worth of property belonging to these various churches and societies, which entirely escape the burden of taxation. There cannot be any question that these churches and other societies cannot claim as exempt property which they rent out for stores and other purposes, as in the case here at bar, although they may use the proceeds to advance the purposes of the society. Subdivision 4 of section 2762, Hill's Code,

expressly provides that the property of churches so used shall be taxed. Then by what process of reasoning can plaintiff contend that an exclusive and limited mutual benefit society can construct great brick buildings in the business centers of the City of Portland, rent the same for stores, saloons, etc., and then refuse to pay their portion of the public burden? The churches, to whom this is denied, do have the merit of offering salvation to every penitent sinner and ask all to come and enjoy the benefit of religious services, without regard to "race, color, or previous condition of servitude."

It is contended that plaintiff corporation is not properly assessed upon the tax roll for the reason that a part of its corporate title has been omitted; that is, the word "Portland" is omitted from the corporate name on said roll, and therefore the assessment is void for the reason that the property is not assessed to the "owner thereof." An error in listing the tax does not destroy the lien nor relieve the owner from paying them. Persons who own land are chargeable with knowledge that it is liable to taxation, and if they neglect to pay what they know it is their duty to pay, they cannot escape liability on the ground of some error or inaccuracy in naming the owner: *Eads v. Retherford,* 114 Ind. 273 (5 Am. St. Rep. 611); *Noble* v. *City of Indianapolis,* 16 Ind. 506.

There is a distinction between the cases of where a tax collector is attempting to sell and convey the title of property in case of an assessment under the wrong name and a case where a party comes in and asks to be relieved from paying any tax upon his property for the reason of some informality in the manner of assessment; while in the former case it is presumed that had the property been assessed to him

in his proper name he would have paid the taxes, and consequently it would be unjust either to add additional costs to the tax or to deprive him of his property for the nonpayment of it; but in the latter case he comes into court admitting that he owns the identical property assessed and knowing it to be subject to taxation, and that properly and equitably it should bear its just proportion of the public burden, and asks the court not only to relieve him of the additional costs and expenses, but also to relieve him of the entire tax which is justly due and owing to the government. Our contention is that plaintiff must, before it can maintain this suit, pay or offer to pay the tax that it concedes is justly due, regardless of any mere informality in the assessment, for "he who seeks equity must first do equity." Plaintiff concedes that it is the owner of lot one in block one hundred and seventy-seven, in the City of Portland, Multnomah County, Oregon; that the tax thereon has not been paid, and unless they are exempted from taxation by virtue of being a benevolent society, before they can enjoin the collection of this tax, they must pay or offer to pay the amount of taxes which was assessed against said property: *Dundee Trust Investment Company* v. *Parrish,* 24 Fed. 197; *Welch* v. *Clatsop County,* 24 Or. 457 (33 Pac. 934); *National Bank* v. *Kimball,* 103 U. S. 733; *Albuquerque Bank* v. *Persea,* 147 U. S. 87; *Hunburg* v. *Palmer,* 7 Sawy. 355.

For respondents there was a brief by *Messrs. Gearin, Silvestone, Murphy and Brodie,* and an oral argument by *Mr. John M. Gearin,* to this effect.

The plaintiff is clearly a charitable institution and as such exempt from taxation under article IX, section

1 of the state constitution, as carried out by section 2732 of the Code. A charity has been often defined, and, for illustration, we append a few definitions: "A charity is a gift to a general public use, which extends to the rich as well as to the poor. * * * All property held for public purposes is held as a charitable use in the legal sense of the term charity": *Perin* v. *Carey,* 65 U. S. (24 How.), 465. Again, the supreme court of Massachusetts, in *Jackson* v. *Phillips,* 14 Allen, 556, says: "A charity, in the legal sense, may be more fully defined as a gift to be applied consistently with existing laws for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." Viewed in the light of these definitions, the articles of incorporation of plaintiff clearly describe a charitable association. The second section of the articles of incorporation reads: "The objects of this society shall be the exercise of benevolence and charity, namely, to relieve the distressed, support the afflicted, attend upon the sick, bury the dead, and create a fund out of and with which such kindly and humane service may be performed." The bylaws, too, show that plaintiff is carrying out these objects, and in order the more effectively to accomplish this the building in question was erected by it. It is no answer to this to say that the beneficiaries of the charity at present must be

28 OR.—13.

members of the society or their widows.   No charity can be universal and be effective.   To be practical in its workings and benefits its scope must be limited to the field capable of being covered with the funds at its command.   And so this plaintiff for the present restricts its benefits to its members and their immediate dependents — its available funds not permitting it to practically extend its charity further.   But its constitution does not restrict it to this.   It may broaden its field of charitable endeavor as its means increase, and to enable it so to do and thereby become a general and public benefit, it asks to be relieved from the burden of taxation.   It makes nothing itself, nor do its members—"it is free from the stain or taint of every consideration that is personal, private, or selfish."

The only question that is worthy of any consideration is whether the land is actually occupied for the purposes for which the society was incorporated.   In determining this question an examination of paragraph 4 of section 2732, Hill's Code, becomes pertinent.   The exception in paragraph 4, "but any part of any building, being a house of public worship, which shall be kept or used as a store or shop, or for any other purpose, except for public worship or for schools, shall be taxed," etc., indicates by implication at least, and certainly clearly enough, that such exception was not contemplated to apply to the property described in paragraph 3; if the legislature intended to say that any property which was owned by a charitable institution which was occupied as a store or shop, but the income from which went into the fund to be used for charitable purposes, should not be exempt from taxation, they would have said so. Their failure to say so in paragraph 3, and so pronouncedly expressing it in paragraph 4 immediately

following, indicates that the exception was only to apply to paragraph 4, and was not intended to be considered with reference to paragraph 3. The phrase "actually occupied" must be construed in a reasonable light; the actual occupancy for a charitable purpose might reasonably be a constructive occupancy by a tenant, the rent derived from which occupancy went to carry on the business of the society and accomplish the charity intended by it. The refinement of reasoning which distinguishes between the actual occupation by the society itself, and the use of the proceeds, where the occupation is constructive, should not have any weight in a court of equity, when the demand made by the society is not for its own advantage, but for the benefit of its beneficiaries.

Even if there could be any question as to whether plaintiff is a charitable institution, or whether it was in the actual occupation of this property, the state is now estopped from raising them, for during a long series of years the county assessors have uniformly omitted to assess this property. This is a contemporaneous construction of the statute that ought to have great weight, and, if continued for a long time, will have the effect of positive law: *Westbrook* v. *Miller,* 56 Mich. 151; *Scanlan* v. *Childs,* 33 Wis. 666; *United States* v. *Union Pacific Railroad Company,* 37 Fed. 555.

The assessment is void for the mistake in the name of the owner on the assessment roll. The corporate name of the plaintiff is "Portland Hibernian Benevolent Society," while the assessment is against "Hibernian Benevolent Society." Section 2770, Hill's Code, requires the assessor to set down in separate columns * * * the names of all the taxable persons in his county. Under the application of this very section by our home courts the assessment is void: *Marx* v. *Han-*

*thorn*, 30 Fed. 584; S. C. 148 U. S. 172; *Dowell* v. *City of Portland*, 13 Or. 248. See also *State* v. *Stoss*, 87 Ala. 119 (6 So. 309); *People* v. *Whipple*, 47 Cal. 592; *Hawthorne* v. *East Portland*, 13 Or. 271; *Dunn* v. *Winston*, 31 Miss. 135; *Abbott* v. *Mindenbaum*, 42 Me. 162; *Hume* v. *Wainscott*, 46 Mo. 145; *People* v. *Castro*, 39 Cal. 65; *Heamelman* v. *Steiner*, 38 Cal. 175; *Briddleman* v. *Brooks*, 28 Cal. 72; *Kelsy* v. *Abbott*, 13 Cal. 609; *Yanda* v. *Whalen*, 9 Texas, 408; *Hamilton* v. *Fond du Lac*, 25 Wis. 486; *Mayer* v. *Trubee*, 22 Atl. 424; Cooley on Taxation, 277, 278 (90 Cal. 444). Applying the law announced in the foregoing decisions to the present case, one cannot escape the conclusion that here there has been no assessment. Under the heading of "Name of taxpayer," we find the name of "Hibernian Benev. Society," and nothing else. This is not the name of plaintiff. Granting to the word "Benev." all that can be claimed for it—that it must be read "Benevolent," we have then, as the name of taxpayer, "Hibernian Benevolent Society." This does not describe plaintiff, whose corporate name is "Portland Hibernian Benevolent Society." A corporation can have but one name. It acts by its corporate name alone. Not only is this name "Hibernian Benevolent Society" not the name of plaintiff, but it is misleading. No one would ever find it looking through the indices for the "Portland Hibernian Benevolent Society." The name "Portland" is an essential part of plaintiff's corporate name. It identifies it, as the names "Northern," "Southern," "Union," "Canadian," etc., designate the different Pacific railroads by these names. It would not be claimed that an assessment of property to the "Pacific Railway" would be a good assessment of the property of the "Southern Pacific Railway." There may be many "Hibernian Benevolent" societies as there are many Pacific rail-

ways, and an assessment to be valid must specify which particular one is intended.

Opinion by MR. CHIEF JUSTICE BEAN.

Article IX, section 1 of the state constitution directs that ''The legislative assembly shall provide by law for uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes as may be specially exempted by law.'' Under this provision no property can be relieved from taxation except such as may be in use for some of the purposes enumerated therein, and then only to the extent specially permitted by legislative enactment. The constitution itself does not exempt any property from taxation, and it authorizes the legislature to do so ''only for municipal, educational, literary, scientific, religious, or charitable purposes.'' It follows, then, that before property can be exempted from taxation it must not only be used for some of the purposes specified in the constitution, but the exemption must be specially authorized by law. Now, the statute which undertakes to exempt property from taxation, and by which the questions presented in this case must be solved, was passed by the territorial legislature in eighteen hundred and fifty-four, and, so far as not inconsistent with the constitution, was continued in force by section 7, article XVIII of that instrument, and is now section 2732 of Hill's Code. By subdivision 3 of this section it is provided that ''The personal property of all literary, benevolent, charitable, and scientific institutions, incorporated within this state, and

such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated," shall be exempt from taxation. Under these constitutional and statutory provisions it is manifest that real property, to be exempt from taxation, must belong to some incorporated literary, benevolent, charitable, or scientific institution, and must be actually occupied for literary, benevolent, charitable, or scientific purposes.

1. The contention for the defendant is that the real property upon which the tax in question was laid is not exempt from taxation for the reason, *first,* that plaintiff is not a charitable institution within the meaning of the law, because its benefits are confined to its own members and their families; and, *second,* that the property assessed is not actually occupied for the purposes for which it was incorporated. Upon the first point the argument of his counsel is that a charitable institution, within the meaning of the exemption law, is one whose benefits are extended to the public generally, or some indefinite portion thereof, without regard to the relation the recipient may bear to the members of the particular organization or society, or to the fees or dues paid. But the principal authorities relied upon by him in support of this position were determinations of controversies arising under constitutional or legislative enactments exempting from taxation property belonging to institutions devoted to "purely public charity," which it is held does not include charitable institutions whose benevolence is confined to their own members or persons having some particular relationship to such members: *Philadelphia* v. *Masonic Home of Pennsylvania,* 160 Pa. St. 572 (23 L. R. A. 545, 28 Atl. 954, 40 Am. St. Rep. 736); *Swift's Execu-*

*tors* v. *Beneficial Society of Easton,* 73 Pa. St. 362; *Delaware County Institute of Science* v. *Delaware County,* 94 Pa. St. 163; *Donohugh's Appeal,* 86 Pa. St. 306; *Mitchell* v. *Treasurer of Franklin County,* 25 Ohio St. 144; *Babb* v. *Reed,* 5 Rawle, 150; *Burd Orphan Asylum* v. *School District of Upper Darby,* 90 Pa. St. 21; *County of Hennepin* v. *Brotherhood of Gethsemane,* 27 Minn. 460 (38 Am. Rep. 298, 8 N. W. 595). But under constitutional or legislative provisions, which, like ours, provide for the exemption of certain property belonging to "charitable institutions," and used for charitable purposes, it is believed that such an institution is entitled to the benefit of the exemption, although its benefactions are confined to its own members or their families. Thus, in *City of Indianapolis* v. *Grand Master,* 25 Ind. 518, it is held that an institution which extends charity to its own members only is a charitable institution within the meaning of the law exempting such institutions from taxation, the court saying: "The third paragraph of the answer presents the question whether that is a charitable institution, in the sense of the statute, which confines its benefactions to those who have become members of the order, having paid the fees commonly required for that purpose? We think that this question must be answered in the affirmative. It is not essential to charity that it shall be universal. That an institution limits the dispensation of its blessings to one sex, or to the inhabitants of a particular city or district, or to the membership of a particular religious or secular organization, does not, we think, deprive it either in legal or popular apprehension of the character of a charitable institution. If that only be charity which relieves human want, without discriminating among those who need relief, then, indeed, it is a rarer virtue than has been supposed. And

if one organization may confine itself to a sex, or church, or city, why not to a given fraternity? So narrow a definition of charity as the third paragraph presupposes is not; that we are aware of, ever attached to it, and we are not at liberty to circumscribe the effect of the statute, and defeat its intention, by affixing to its terms an unusually limited meaning." So also in *City of Petersburg* v. *Petersburg Benevolent Mechanics' Association,* 78 Va. 431, it was held that an association which applies its revenues to the payment of current expenses, and to the relief of its indigent members and the families of such as have died in need, was a charitable institution. "These are charitable purposes," says the court, "and the relief afforded is none the less charity because confined to members of the association and families of deceased members. It is not essential to charity that it shall be universal." And, again, in *Book Agents of the Methodist Episcopal Church South* v. *Hinton,* 92 Tenn. 188, (19 L. R. A. 289, 21 S. W. 321,) it was held that a corporation created as an arm or agency of the Methodist Church and charged with the duty of manufacturing and distributing books, periodicals, etc., in the interest and under the auspices of the church, and thereby raising a fund with which to support its worn-out preachers and their families, is a religious and charitable institution within the meaning of the provision of the constitution exempting such institutions from taxation. From an examination of this question, and all the authorites within our reach bearing upon it, we take the result to be that an institution organized for benevolent and charitable purposes, free from any element of private or corporate gain, and which devotes its entire revenue to the payment of current expenses and the relief of the poor and needy, is a charitable institution within

the meaning of the law, although it may confine its benefits primarily to its own members and their families.

2. But whether the plaintiff is such an institution or not, we are clear the property in question is not exempt from taxation, for the reason that it is not actually occupied for charitable purposes. Subdivision 3 of section 2732, Hill's Code, under which the exemption is claimed, exempts only such real property belonging to incorporated literary, benevolent, charitable, or scientific institutions as shall be actually occupied for the purposes for which they were incorporated. It does not exempt from taxation the enumerated institutions as such, or real estate simply because it belongs to such institutions, or even because it is used for literary, scientific, charitable, or benevolent purposes, but it expressly confines the right of exemption to such real estate only belonging to them as shall be actually occupied in a particular manner and for a specified purpose, and this right, therefore, clearly cannot be extended to property occupied and used for other and different purposes, although the revenue derived from its use is devoted exclusively to the objects for which the institution was established. It is the actual occupancy of the property which determines its right to exemption, and not the use made of its proceeds. The plain and obvious meaning of the statute is that only the real estate actually occupied and in use by these different institutions for the purposes for which they were organized, shall be exempt from taxation. While so occupied and used, it does not come in competition with the property of other owners, and the purpose for which it is used was supposed by the legislature to be a sufficient benefit to

the public to justify its exemption from the burdens of taxation imposed upon other property. But when such property is used for the purpose of accumulating money, the law imposes upon it the same burden of taxation as it imposes upon other property similarly situated. The statute does not undertake to discriminate between the uses which different societies or individuals will make of the proceeds of their business, and determine for that reason that one shall be taxed and the other not. It deals with the property as it finds it, and not with what may be done with its proceeds in the future. Upon this question the authorities are practically unanimous under similar statutory provisions: *City of Indianapolis* v. *Grand Master,* 25 Ind. 518; *Presbyterian Theological Seminary* v. *People,* 101 Ill. 578; *Washburn College* v. *Commissioners of Shawnee County,* 8 Kan. 344; *Detroit Young Men's Society* v. *Mayor of Detroit,* 3 Mich. 172; *Cincinnati College* v. *State,* 19 Ohio, 110; *Cleveland Library Association* v. *Pelton,* 36 Ohio St. 253; *First Methodist Episcopal Church* v. *City of Chicago,* 26 Ill. 482; *City of New Orleans* v. *St. Patrick's Hall Association,* 28 La. Ann. 512; *City of New Orleans* v. *St. Anna's Asylum,* 31 La. Ann. 293; *Mayor of Baltimore* v. *Grand Lodge,* 60 Md. 280; *County Commissioners of Frederick County* v. *Sisters of Charity of St. Joseph,* 48 Md. 34; *Appeal Tax Court* v. *Grand Lodge,* 50 Md. 429; *Redemptorists* v. *County Commissioners of Howard County,* 50 Md. 449; *Salem Lyceum* v. *City of Salem,* 154 Mass. 15 (27 N. E. 672); *Chapel of the Good Shepherd* v. *Boston,* 120 Mass. 212; *Mulroy* v. *Churchman,* 52 Iowa, 238 (3 N. W. 72); *Orr* v. *Baker,* 4 Ind. 86; *Trustees of Phillips' Exeter Academy* v. *Exeter,* 58 N. H. 306 (42 Am. Rep. 589); *Morris* v. *Lone Star Chapter,* 68 Texas, 698 (5 S. W. 519); *Proprietors of the South Congregational Meeting-house in Lowell* v. *City of Lowell,* 1 Metc. (Mass.), 538; *Wyman* v. *City of St. Louis,* 17 Mo. 336; *State* v. *Ross,* 24 N. J. Law,

498; *Massenburg* v. *Grand Lodge,* 81 Ga. 212 (7 S. E. 636); *Fort Des Moines Lodge,* v. *County of Polk,* 56 Iowa, 34 (8 N. W. 687). See also notes to *City of Petersburg* v. *Petersburg Benevolent Mechanics' Association,* 8 Am. and Eng. Corp. Cas. 488, and *Book Agents of the Methodist Episcopal Church South* v. *Hinton,* 92 Tenn. 188 (19 L. R. A. 289, 21 S. W. 321).

It is so manifestly just that all property shall bear its due proportion of the expenses of government that laws granting exemption from taxation are always strictly construed, and before such exemption can be admitted, the intent of the legislature to confer it must be clear beyond a reasonable doubt. Thus, it is held that laws exempting from taxation "houses of religious worship," or "buildings erected and used for religious worship," or "property used for religious purposes," etc., do not exempt a parsonage erected by a religious society for the use of its minister, although occupied by him free of rent and built on grounds which would otherwise be exempt: *State* v. *Axtell,* 41 N. J. Law, 117; *County of Hennepin* v. *Grace,* 27 Minn. 503 (8 N. W. 761); *Ramsey County* v. *Church of the Good Shepherd,* 45 Minn. 229 (11 L. R. A. 175, 47 N. W. 783); *Third Congregational Society* v. *Springfield,* 147 Mass. 396 (18 N. E. 68); *Wardens of St. Mark's* v. *Mayor of Brunswick,* 78 Ga. 541 (3 S. E. 561); *Gerke* v. *Purcell,* 25 Ohio St. 229; *Trustees of the Methodist Episcopal Church* v. *Ellis,* 38 Ind. 3; *Vail* v. *Beach,* 10 Kan. 214. And a building belonging to the Young Men's Christian Association, which contains above the basement, in which are the gymnasium, bowling-alley, and bathroom, twenty-two rooms, only one of which is devoted to public worship, was held not exempt under a law exempting "every building used exclusively for public worship": *Young Men's Christian Association of New York* v. *Mayor of*

*New York,* 113 N. Y. 187 (21 N. E. 86). The constitution of this state requires an equal and uniform rate of assessment and taxation of all property, excepting "such only for municipal, educational, literary, scientific, religious, or charitable purposes as may be specially exempted by law." Taxation is, therefore, the rule: exemption, the exception; and nothing can be held to be exempt by implication. It is only such property used for the purposes specified in the constitution as the legislature may specially exempt which can escape taxation. Exemption is not a matter of right, but a pure matter of grace; and every person or corporation claiming that his or its property, or any part thereof, is exempt must be able to show some clear constitutional or legislative provision to that effect. The legislature in its wisdom has provided that of the real property belonging to literary, benevolent, charitable, or scientific institutions incorporated within this state, such only shall be exempt from taxation as shall be actually occupied for the purposes for which they were incorporated, and under all the rules for the construction of exemption laws this cannot be held to include real property which is occupied for other purposes, although the revenues received therefrom may be used for the purposes of the corporation. Some of the authorities cited go to the extent of holding that when a portion only of a building belonging to such an institution is occupied for the purposes for which it was incorporated, and the remainder is occupied by tenants paying rent, the entire building is liable to taxation, but the general tenor of the authorities, and no doubt the better rule, is that in such cases the assessor, in estimating the value of the property, should make a proper allowance for the portion of the building occupied by the

society, so that the tax levied will be laid only upon the value of that which is not exempt, though the property may be assessed as a whole.

3. It is insisted·by the plaintiff that the state is estopped from levying the tax in question for the reason that, while it has owned the property assessed since eighteen hundred and seventy-seven, no attempt was made to assess it until the year eighteen hundred and ninety, and that, relying upon that fact, it borrowed in that year thirty-three thousand dollars on a mortgage, to enable it to erect the building now on the premises, and stipulated and agreed to pay the taxes on such mortgage. But the neglect or omission of the proper officers to assess the property cannot control the duty imposed by law upon their successors, or affect the legal construction of the statute under which its exemption from taxation is claimed: *Vicksburg Railroad Company* v. *Dennis,* 116 U. S. 665 (6 Sup. Ct. 625). The case of *State* v. *Addison,* 2 S. C. 499, relied upon by plaintiff, is not in point. That was a proceeding to enforce a municipal tax. The city had by ordinance in seventeen hundred and ninety-three exempted all and every religious and charitable society from the payment of any city tax, and the city council for more than three quarters of a century had included the relators as among the societies thus exempted, and the court held that the action of the city council for so long a time would be received as the proper interpretation of their own enactment so long as it remained in force.

4. Again, it is claimed that because the name appearing on the assessment roll as the owner of the property is "Hibernian Benevolent Society," and not

the "Portland Benevolent Hibernian Society,"—the real owner, — the assessment is void, and should be enjoined. We understand the rule to be that a court of equity will not interfere by injunction to restrain the collection of a tax merely because of the alleged illegality or irregularity appearing upon the face of the assessment, but will leave the party to his remedy at law: 1 High on Injunctions, § 491; *Odlin* v. *Woodruff,* 31 Fla. 160 (22 L. R. A. 699 and note, 12 So. 227). "In view of the authorities," says LORD, C. J., "the considerations which influence a court of equity to restrain the collection of a tax are confined to cases where the tax itself is not authorized, or, if it is, that such tax is assessed upon property not subject to taxation, or that the persons imposing it were without authority in the premises, or that they have proceeded fraudulently": *Welch* v. *Clatsop County,* 24 Or. 457 (33 Pac. 934). It follows that the decree of the court below must be reversed and the complaint dismissed.

REVERSED.

Decided November 18, 1895.