## PARKHURST *v.* DEPT. OF REVENUE

Larry D. Thomson, Assistant County Counsel, Eugene, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Robert C. Robertson, Van Dyke, DuBay, Robertson & Paulson, P. C., Medford, represented taxpayer defendant.

Decision for defendant rendered December 15, 1971.

LOREN D. HICKS, Judge Pro Tempore.

This case is brought by the Director of the Department of Assessment and Taxation for Lane County appealing from an adverse ruling by the Department of Revenue. The dispute concerns property belonging to Youth Revival Centers, Inc., an Oregon nonprofit corporation. The property in question consists of approximately 77 acres of land and improvements and farm equipment located in Lane County which the assessor placed on the tax rolls for the tax year 1970-71.

The corporation made a timely filing under ORS 307.162, requesting tax exemption as a benevolent, charitable institution under ORS 307.130 and as a re-

ligious organization under ORS 307.140. The Director of the Lane County Department of Assessment and Taxation denied the exemption, whereupon the corporation appealed to the Department of Revenue asking for specific relief under ORS 307.140 "for the reason that all of the real and personal property is devoted exclusively to religious purposes and all of said properties are used in connection with and as an integral part of the said religious functions of this corporation." At the hearing, the corporation was allowed to amend the petition to show that the corporation was also relying on ORS 307.130 which extends property tax exemption to benevolent and charitable institutions and ORS 307.145 which grants exemption to schools, academies and student housing belonging to incorporated religious organizations. The Director of the Department of Revenue concluded that all of the corporation's property qualified for exemption from taxation under ORS 307.130 and ORS 307.140. The Department of Assessment and Taxation of Lane County appealed to this court.

Youth Revival Centers, Inc., was organized in 1969 under ORS chapter 61 by persons interested in working through church organizations to reach and identify with young so-called dropouts and hippies to bring purpose and understanding into their lives. The idea was to direct such youths away from wandering, dependency and law breaking and toward becoming religious, independent, self-respecting, law-abiding citizens.

According to the Articles of Incorporation, the specific purposes for which Youth Revival Centers, Inc., was organized were:

    "1. * * * to evangelize and propogate [sic]

the gospel of Jesus Christ among the youth, and especially among the Hippies, the Radicals, drug users, and other troubled youth.

"2. to help the drug addicted kick the habit.

"3. to counsel and try to reconciliate [sic] families.

"4. to get dropout's [sic] to continue their education.

"5. to reconstruct their moral standards and encourage our youth to take a responsible place in society.

"6. to establish places of worship or churches to be known as Youth Revival Centers."

The bylaws of the corporation further provided in part:

"Its beliefs are to be fundamentally evangelical in its teachings. Its aims are to be Biblical and Holy in operation. The King James Version of the Holy Bible is to be its final authority.

"Its officers and members must be born-again members of the Body of Christ.

"* * * * *

"Each house or local body affiliated with the Oregon Youth Revival Center will have only one aim in mind and practice, that will be:

"1. to propogate [sic] the gospel of Jesus Christ and that gospel only.

"2. shall not participate in any civil, political or any other demonstrations, including religious demonstrations.

"3. will at all times try to cooperate with the local authorities.

"* * * * *

"9. the 70 acres of land in Lane County Oregon, owned by the Oregon Youth Revival Center shall be used to raise up young men and women for service in the Body of Christ. Also for helping anyone change their life by accepting and understand-

ing Jesus Christ as their Lord and Saviour and take a useful place in their community for Christ."

The real property in question was purchased by Youth Revival Centers in December 1969 and was fully paid for in 1970 with money donated to the corporation by outsiders. The land is used as a farm for a source of food for participants in the program, as a vocational education vehicle, and as a central location for the corporation's overall activities.

About 30 people, who had been living together in a house in Eugene, moved onto the premises early in 1970 and commenced the building and learning projects at once. Construction of roads, walks, water and sewer systems and buildings was begun. Farm animals, including cattle, pigs, poultry, goats and rabbits, were acquired. Fuel for household purposes was mostly wood cut on the land, partly from areas cleared for additional livestock grazing. All construction was performed according to code regulations and was commenced only after conferences with local government officials. By July 1, 1970, a half dozen or so buildings, including cabins, a bunkhouse, a dining hall, animal sheds and a pump house, were in use and about 70 persons were residing on the farm. Organization leaders expect to be able to accommodate two or three hundred people there in the future.

The officers, directors and other leaders of Youth Revival Centers, Inc., perform their services without any salary, taking only what they actually need to maintain a basic living standard. The president of the corporation, for example, testified that in 1970 he received from Youth Revival Centers only his board and room, a meager expense allowance and about $90 in cash.

In addition to its headquarters on the subject property in Lane County, the corporation has established approximately 30 centers in various parts of the United States, mostly in Oregon. The centers are known as Shiloh Houses and are supervised by missionaries from the Lane County headquarters. The function of these missionaries is to seek out youths who are wandering on the streets or living in communes, or who are otherwise dropouts from established society, bring them into the centers and convert them to a belief in the reality of Christ and the Bible and to prevent them from becoming or continuing as public charges.

The testimony of the witnesses at the trial convinced this court that the stated purposes and goals of Youth Revival Centers, Inc., are being achieved. The leaders of the organization have sincerely and actively sought to bring the substance of the Bible to young people of the so-called lost generation who are willing to listen. They have counseled, often with success, that satisfaction in life can be found in religious beliefs, in school, in employment and in the leading of worthwhile, law-abiding lives of unselfish meaningful service to others. It is clear that the activities of the corporation are religious, charitable, vocational and rehabilitative, and that its program and benefits are available to everyone.

Oregon law, through ORS 307.030, requires that all property within the state, except as otherwise exempted by law, shall be subject to taxation. Oregon has continuously, since the decision in *Benevolent Society v. Kelly*, 28 Or 173, 42 P 3 (1895), required that statutes exempting property from taxation be strictly, but reasonably, construed, meaning that the right to the exemption must be clearly proved by the taxpayer, keeping in mind, however, that the true in-

tent of the legislature is the primary consideration. *Corbett Inves't Co. v. State Tax Com.,* 181 Or 244, 250, 181 P2d 130 (1947). For an extensive list of authorities on the question of strict construction of exemption statutes, see *Emanuel Lutheran Char. v. Dept. of Rev.,* 4 OTR 410 (1971).

Youth Revival Centers, Inc., makes its primary claim for exemption on the premise that it is a religious organization and that the property in question meets the criteria of ORS 307.140 which provides for exemption of "houses of public worship and other additional buildings used solely for entertainment and recreational purposes by religious organizations." The statute also provides, however, that "any house of public worship which is kept or used as a store or shop or for any purpose other than for public worship or schools shall be assessed and taxed."

A reasonable and strict construction of ORS 307.140 leads to the conclusion that it applies only to churches and their recreational additions. Buildings such as those of Youth Revival Centers, Inc., which are used primarily as sleeping quarters, workshops, animal barns, storage sheds and a dining hall, do not come within the statute even though they are incidentally used for daily prayer meetings, Bible study and religious discussions and counseling. None of the buildings is primarily a place of public worship and none of the property is primarily used for church entertainment and recreation, even though the corporation's predominant interest and orientation is of a religious nature. In the minds of the leaders of Youth Revival Centers, Inc., all of their activities and property are devoted to religious purposes. However, the property serves primarily as a place in which to live, work and

learn in a religious atmosphere, which places it outside the statute.

Youth Revival Centers, Inc., also claims exemption under ORS 307.145 on the theory its property can be classified as "schools, academies and student housing accommodations owned * * * by incorporated religious organizations used exclusively by such institutions or organizations for or in immediate connection with educational purposes." Although instruction is a part of the program of Youth Revival Centers, none of its property is used exclusively for educational purposes. Furthermore, the program itself does not qualify as education under the exemption statute. Persons who have a practical, working knowledge of farming, carpentry, plumbing, surveying, welding, auto mechanics and bookkeeping give on-the-job instruction in such subjects to those who are interested. This is not the concentrated, formal education contemplated by ORS 307.145.

The remaining statute under which exemption is claimed is ORS 307.130. Evidence received at trial shows that Youth Revival Centers, Inc., qualifies under the statute as an incorporated, nonprofit benevolent, charitable institution. The corporation's primary goal and program is helping others to the benefit of society and the state. People in need who are total strangers to the organization are encouraged to come to the farm and participate in the program for their physical, emotional and moral improvement without charge or other obligation. They are given food, clothing and other necessities and, in some cases, their debts are paid with no strings attached. Those on public welfare are urged to terminate their welfare status and let Youth Revival Centers, Inc., assume their financial burdens. The only obligation of the

recipients of these benefits is to observe the law while participating in the program. There is no requirement to pay or donate money to the corporation. The money that purchased the land and equipment and that supports the organization and its programs has been donated almost entirely by outsiders without solicitation. Neither the corporation nor its leaders make any profit from the corporate activities. The aims of the program are wholly charitable and are freely available to anyone who might benefit from them.

The corporation is a comparatively new, small, independent and unsophisticated organization. However, its services are praiseworthy and significant. They are given to recipients as members of society and of the general public and not as "members" of Youth Revival Centers, Inc. The corporation is not operated as a membership organization. While its leadership has been fairly stable, most of its followers come and go, staying only a few days, a few weeks or, at most, a few months. No one can properly be classified as a member or an owner of the corporation or its property, and no one will benefit personally from tax exemption.

ORS 307.130 limits the exemption for charitable institutions to "such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * benevolent, charitable * * * work carried on by such institutions." All of the land, improvements and equipment claimed in this case were reasonably necessary and appropriate to the charitable purposes of Youth Revival Centers, Inc., and were actually and exclusively used by the corporation during the time in question. At that time the premises were occupied by a growing number of the leaders and followers of Youth Revival Centers and construction

of improvements, which itself was a part of the charitable teaching and learning program, was in progress. The land not used for building sites was put to use as woodlot and pasture. Although use of the land by Youth Revival Centers, Inc., was not intensive and was just beginning, it was not lying idle. The property, both real and personal, was held, occupied and actually used for the charitable, benevolent purposes of the organization and is therefore exempt for the year in question. *Willamette Univ. v. Tax Com.*, 245 Or 342, 422 P2d 260 (1960); *Mult. School of Bible v. Mult. Co.*, 218 Or 19, 343 P2d 893 (1959).

The order of the Department of Revenue granting exemption under ORS 307.130 is sustained.