# GERMAN APOSTOLIC CHRISTIAN CHURCH
## *v.* DEPARTMENT OF REVENUE

R. W. PicKell, Salem, represented plaintiff.

Walter J. Apley, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered September 28, 1976.

Part affirmed, part reversed and remanded — Or—, — P2d — (Sept. 27, 1977).

CARLISLE B. ROBERTS, Judge.

Plaintiff is a nonprofit religious corporation, organized under the laws of the State of Oregon. It appealed to the defendant Department of Revenue to reverse a determination by the County Assessor of Marion County that certain improved real property (Assessor's Account No. 7558-001) was subject to assessment for the tax year 1975-1976. The plaintiff contends that the property is exempt from taxation under the provisions of ORS 307.140, as amended by Or Laws 1973, ch 397, § 1. After a hearing, the Department of Revenue issued its Order No. VL 76-67, dated February 13, 1976, upholding the determination of the county assessor and denying the relief requested by the plaintiff.

The subject property is a tract of 2.5 acres situated just north and contiguous to the parcel of land on which the plaintiff's church building is located at 10575 Kaufman Road, N.E., a few miles from Silverton, Oregon. The congregation of the church is small, comprising about 50 active members from 23 families. The organization is led by an Administrating Elder, who also administers to a small group in Portland and has responsibilities for three churches in the State of Illinois.

Beginning in 1973, utilizing in large part the contributions of labor from its own congregation and monetary gifts from fellow churches in Germany, Switzerland and Illinois and members of its own congregation, the church undertook to improve the subject land by construction of a building. This improvement included a full basement and first and second stories, designed to be used for a number of purposes. The central portion of the first floor is designated as living space for the Administrating Elder (who is also the minister to the church) and as a church meeting room. The space is divided into a living room, dining room, kitchen, bath, and two bedrooms, but one bedroom is fully utilized as the elder's administrative office and study. To the right and to the left of this central portion is a total of four apartments, each including a living room, dining and kitchen area, and either one or two bedrooms, with bath. On the second floor, immediately above the space assigned to the Administrating Elder, is an area designated for guests, including five bedrooms and two baths. There is one apartment at either end of this area, designed as an apartment for an elderly member, each including living room, dining and kitchen area, bedroom and bath. The full basement contains a small fireproof vault in which is stored an inventory of church books which are sold to church members at actual cost. The area is otherwise designated for the uses of the congregation as a meeting and recreation area. It also contains a locker area for the accommodation of occupants of the apartments.

The church's minister and Administrating Elder since 1960 is a retired man who takes full responsibility for the administrative work of the church and, under the guidance of a board of directors, for the management of the subject property. He serves without monetary compensation but he and his wife are

given the use of the first-floor apartment above described as living quarters.

Although the church congregations in Europe and America are small, there appears to be an unusually close relationship between the several elders who are entrusted with the management of the church's spiritual and secular concerns and responsibilities. The undisputed testimony shows constant communication between them. It is apparent that visitations of elders are anticipated. The Administrating Elder testified that from April 30 to May 7, 1975, the space on the second floor designated for use of guests was occupied by elders and their spouses from Germany and Switzerland. Otherwise, there appears to have been little occupancy of these rooms during the tax year.

The six apartments are all designated as apartments for elderly members. On the assessment date, three of them were occupied by elderly widows of small means and a fourth apartment was reserved for another such person, with anticipation of an early occupancy. From a legal standpoint, these apartments are held on a month-to-month basis by the occupants but, while there is no written lease, there is no time limit imposed. Apparently there is an understanding that each tenant can continue to live in her apartment for as long as she desires and she will be aided by the other church members in the role of good neighbors in a small community. The rental fees paid were set by the board of directors at $110, $90 and $80, depending upon the occupant's ability to pay (the occupants' income flowing chiefly from Social Security and interest on savings). The Administrating Elder (affirmed by the secretary-treasurer of the board of directors) testified that the board determined each individual rental on the theory of making the payment "as reasonable as we could and still keep up the building." According to the testimony, the rentals charged

are from one-half to two-thirds of equivalent units in the area which are owned and rented for a profit. The rental activity is not designed for profit. In 1975, the occupants made payments of $3,920. Gifts of local church members and those abroad, intended for support of the undertaking, totaled $2,251. The church maintains no reserve for depreciation. The rents set by the board assumed that no property taxes would be payable on account of the subject property.

■ The statute which is most pertinent to the decision in this suit is ORS 307.140, which was amended by Or Laws 1973, ch 397, § 1. In the quotation which follows, new material is indicated by underscoring; deleted material is enclosed in brackets:

"Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than [for public worship or schools] those stated in this section shall be assessed and taxed the same as other taxable property.

"(2) Parking lots maintained solely for the use, without charge, of persons going to and from the buildings exempt under subsection (1) of this section, but not if said lots are used for parking or other purposes not connected with the use or maintenance of the buildings."

Subsection (2) of the foregoing was amended by Or Laws 1974 (ss), ch 52, § 2, as follows:

"(2) Parking lots used for parking or any other use as long as that parking or other use is permitted without charge. [maintained solely for the use, without charge, of persons going to and from the buildings exempt under subsection (1) of this section, but not if said lots are used for parking or other purposes not connected with the use or maintenance of the buildings.]"

The amendments above to subsection (1) reflect the decision of this court in *Archdiocese of Portland v. Dept. of Rev.,* 5 OTR 111 (1972), *aff'd,* 266 Or 419, 513 P2d 1137 (1973), holding that the advancement of religion is a "charitable" purpose within the meaning of ORS 307.130 which grants exemption from taxation to incorporated literary, benevolent, charitable and scientific institutions. The words "literary," "benevolent," and "charitable" are taken directly from ORS 307.130. However, the words "administration" and "education" may have been suggested by language in the Tax Court's decision in the *Archdiocese* case. Read together, they justify an assumption by the court that this legislative action has widened the former boundaries of the property tax exemption allowed religious organizations in Oregon.

■■ As noted above, the subject property is devoted to several different uses. Each use must be examined to determine whether it comes within the exemption statute. However, it is well established that an otherwise exempt corporation does not lose such status if some part of its property is found subject to the property tax; the principle of apportionment is implicit in the exemption statute and has been supported by the case law for many years. *See YMCA v. Dept. of Rev.,* 268 Or 633, 522 P2d 464 (1974); *Benevolent Society v. Kelly,* 28 Or 173, 42 P 3 (1895).

The first-floor space assigned to the Administrating Elder and his wife for living purposes, generally, can be considered the church's parsonage or manse. Ordinarily it is deemed to be a part of the remuneration of the minister and may or may not be contiguous to the church itself. Oregon, under its statute allowing an exemption for "[a]ll houses of public worship and other additional buildings and property used solely for * * * entertainment and recreational purposes by religious organizations, * * *" has consistently imposed property taxes upon a parsonage. The rule is first mentioned in the case law in *Benevolent Society v. Kelly, supra,* at 195, by way of dictum in support of the strict construction of tax exemptions:

> "It is so manifestly just that all property shall bear its due proportion of the expenses of government that laws granting exemption from taxation are always strictly construed, * * *. Thus, it is held that laws exempting from taxation 'houses of religious worship,' or [opening] 'buildings erected and used for religious worship,' or 'property used for religious purposes,' do not exempt a parsonage erected by a religious society for the use of its minister, although occupied by him free of rent and built on grounds which would otherwise be exempt: [citations omitted] * * *."

This oft-used quotation has also been relied upon by the Attorney General in opinions holding that parsonages are subject to taxation (29 Op Att'y Gen 387 (1958-1960); 17 Op Att'y Gen 613 (1934-1936)). The dictum follows the generally accepted rule. Annot, 13 ALR 1196 (1921). The court finds that no change in the taxation of parsonages has been made by the enactment of the amendments found in Or Laws 1973, ch 397, § 1, quoted above.

There was testimony which suggested that the living room and dining room space in the Administrating

Elder's apartment was open for use by members of the church, available four nights a week, but there was no testimony that such use was actually made thereof. The court observes that this is a new building and that if regular, scheduled uses were made by the parishioners of the premises for religious, entertainment and recreational purposes, giving the county assessor a basis for apportionment, a partial exemption could be granted, but there is no evidence in the record which would permit such exemption for the year in question.

The Administrating Elder testified that one bedroom had been converted into an office which was solely used for church administrative work. This portion of the property is exempt for the tax year 1975-1976 by virtue of the holding in *Archdiocese of Portland, supra,* as well as by the 1975 statute as amended.

The suite designated as guest rooms for visiting officials must also be held taxable. So far as the record shows, these rooms were used for one week in the whole year for official visitors and their spouses. The court deems such use insufficient to merit a tax exemption. There was no other testimony of a use being made in this area.

The basement vault, used in the administration of the church work, is exempt under the statute. So also is the portion of the basement used for congregational meetings and recreation.

The most difficult question is raised by the use of six apartments as living space by four members of the church, each of whom is elderly, a widow and possibly without sufficient funds to pay the typical market rentals for similar space. This program, prior to the *Archdiocese* case and to the 1973 amendment to ORS 307.140, would have been outside the statute,

but must now be evaluated under the language of "benevolent, charitable" activities. ("Benevolent" is synonymous with "charitable." *Methodist Homes, Inc. v. Tax Com.,* 226 Or 298, 308-309, 360 P2d 293 (1961).)

■■ The provisions of housing for the elderly is not a charitable enterprise per se in Oregon. *Friendsview Manor v. Tax Com.,* 247 Or 94, 420 P2d 77, 427 P2d 417 (1967); *Methodist Homes, Inc., supra.* However, in the *Methodist Homes* case, 226 Or at 309-310, Mr. Justice WARNER, analogizing the hospital situation to the home for the elderly, reviewed the hospital cases to determine the principles on which a finding could be made that a given hospital (although charging what the traffic could bear) would be found to be charitable and therefore exempt from property taxation. He finds six criteria (although he adds, on p 310: "We do not hold that all the foregoing factors must be present before a given institution can be declared one of charitable or noncharitable pursuits. Nor do we say that the list includes all items which may assist in a conclusion respecting the charitable or noncharitable status of a given corporation. The itemization represents only those particulars which have been in the past employed by this court in discovering if a given hospital is or is not in fact eleemosynary.")

The first question to be answered is whether the receipts of the institution are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed. Second, whether patients or patrons receive the same treatment irrespective of their ability to pay. Third, whether the doors are open to rich and poor alike and without discrimination as to race, color or creed. Fourth, whether charges are made to all patients and, if made, are lesser charges made to the poor or are any charges made to the in-

digent. Fifth, whether there is a charitable trust fund created by benevolent and charitably-minded persons for the needy or donations made for the use of such persons. Sixth, whether the institution operates without profit or private advantages to its founders and the officials in charge.

A review of the testimony indicates that all of these questions can be answered in support of a finding of charity except for the second and third, as to which the testimony is insufficient. No affirmative statement was made with respect to the selection of individuals who were allowed to lease the apartments. It was only clear that they were all elderly, members of the church, and needy. More than this is required before taxpayers generally can be asked to aid in the support of the fortunate few chosen by plaintiff to occupy its housing (which appears to be excellent in quality).

In *Benevolent Society v. Kelly, supra,* 28 Or at 190, the court notes that a contention of the defendant was that the real property upon which the tax in question was laid was not exempt from taxation for two reasons (the second being that the property assessed was not actually occupied for the purposes for which the plaintiff was incorporated) and the first, more important for the purposes of this suit, being that the plaintiff was not a charitable institution within the meaning of the law because its benefits were confined to its own members and their families. The court there held (at 191):

"* * * But under constitutional or legislative provisions, which like ours, provide for the exemption of certain property belonging to 'charitable institutions,' and used for charitable purposes, it is believed that such an institution is entitled to the benefit of the exemption, although its benefactions are confined to its own members or their families. * * *"

However, in *Methodist Homes, Inc., supra,* 226 Or at 314-316, Mr. Justice WARNER adopts the view advanced by Mr. Justice ROSSMAN in *Ore. Physicians' Serv. v. State Tax Com.,* 220 Or 487, 349 P2d 831 (1960), wherein Mr. Justice ROSSMAN declared that:

" '* * * If the "dominant and controlling" motive of the taxpayer is "primarily to benefit the taxpayer's membership economically, and only incidentally to further larger public welfare," then the exemption must be denied. * * *' "

Both *Methodist Homes, Inc.,* and *Ore. Physicians' Serv.* are readily distinguished from the present case in an important aspect, inasmuch as the finding in those two decisions was that the two organizations were basically "of a commercial character which obviously exists only for the benefit of its members" which "can not claim exemption from taxation even though it pays no dividends or devotes its entire profits to charity." *Methodist Homes, supra,* 226 Or at 315. That is not the case here. However, plaintiff's contentions may fall short not only under the criteria of *Methodist Homes,* but also under the rule adduced in the case of *Kappa Gamma Rho v. Marion County,* 130 Or 165, 279 P 555 (1929), where it was held that a fraternal organization existed only for the benefit and convenience of its members and therefore was not exempt from property taxation.

In this state of the record and following Oregon's strict construction of tax exemptions (that is, following the legislative intent of the statute as it appears to the court), only the following areas of the premises are found to be exempt from real property taxation, on a square foot measure, for the tax year 1975-1976: (1) the first floor bedroom, used by the Administrating Elder for a church office; (2) the basement meeting area and recreation room; and (3) the fireproof vault located in the basement. (The vault's value as

a real property improvement as well as its "area" is exempt.)

The basement locker space provided for apartment holders is taxable with the apartments.

No testimony was offered with respect to the use of the tract of 2.5 acres other than as a site for the building. Pictures of the improvement reveal automobiles parked nearby, but no testimony was adduced as to the site's use as a parking lot. The county assessor must exempt from taxation the same proportion of the actual site of the building as is exempted from the total floor space of the structure; the remainder of the 2.5 acres was subject to taxation.

Defendant's Order No. VL 76-67 is affirmed except as modified by this decision.

Each party shall bear its own costs.