THE YOUNG MEN'S CHRISTIAN ASSOCIATION OF THE CITY OF NEW YORK, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

The Y. M. C. Association of the city of New York, incorporated under the act of 1866 (Chap. 350, Laws of 1866), is not a seminary of learning within the meaning of the statutory provision exempting from taxation buildings erected for the use of, and used by such institutions.    (1 R. S. 388, § 4, sub. 3, as amended by chap. 397, Laws of 1883.)

Said association erected on lots owned by it on the Bowery a building, the basement of which contained a gymnasium, bowling alley and bath-room; above were twenty-two rooms, one of which only was devoted to purposes of public worship; and that was used also as a lecture hall.    In an action to cancel a tax levied upon said premises, *held,* that they were not exempted from taxation under the general act (*supra*) exempting "every building for public worship" as the same is modified in its application to the city of New York by the "Consolidation Act" (§ 827, chap. 410, Laws of 1882), as it was not exclusively used for such purpose; and, in the absence of any special act exempting it, that the property was liable to taxation.

*Y. M. C. A.* v. *Mayor, etc.* (44 Hun, 102) reversed.

(Argued March 4, 1889; decided April 16, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 16, 1887, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to have a tax assessed upon certain real estate belonging to plaintiff adjudged void and to have the same canceled of record and the defendant restrained from collecting the same.

*David J. Dean* for appellant.    The plaintiff is not a "religious society" within the meaning of the statutes relating to taxation.    (Laws of 1882, chap. 410, § 827 ; *Northwestern University* v. *People*, 86 Ill. 141 ; *Richmond Co. Academy* v. *Bohler*, 7 S. E. Rep. 633.)    The plaintiff's property in the Bowery was not entitled to exemption by reason of its use. (*People* v. *Collins*, 18 N. Y. S. R. 125 ; 10 How. Pr. 139 ;

*Hebrew Free School Assn.* v. *Mayor, etc.*, 4 Hun, 446; *Assn. for Colored Orphans* v. *Mayor, etc.*, 38 id. 594; 104 N. Y. 584; Laws of 1827, chap. 228, §§ 3, 4, 5; 1 R. S. 458, § 24; R. S. [7th ed.] 1116, § 24.) These statutes should be strictly construed. (*People ex rel.* v. *Comrs.*, 95 N. Y. 557.)

*Stephen P. Nash* and *Hubbard Smith* for respondent. Plaintiff constitutes a religious society within the meaning of the statute. (*Hebrew Free School* v. *Mayor, etc.*, 4 Hun, 450; *Assn. for Colored Orphans* v. *Mayor, etc.*, 38 id. 593; 24 Daily Reg. 146; *People ex rel.* v. *Barber*, 32 Hun, 27; *People ex rel. Academy of Sacred Heart* v. *Comr. of Taxes*, 6 id. 109; *People ex rel. St. John's College* v. *Comr. of Taxes*, 10 id. 246.) If plaintiff constitutes a religious society, then the property should be considered exempt from the time it is divested of the character of property held in the market for the purpose of deriving a possible profit, and assumes the character of property that is devoted to purposes of public welfare. (*W. H. M. Church* v. *Mayor, etc.*, 20 Hun, 297; *St. James Church* v. *Mayor, etc.*, 41 id. 318.)

FINCH, J. The only question presented by this appeal is whether the Young Men's Christian Association, located in the city of New York, is liable to taxation upon the portion of its property in that city known as the Bowery Institute. No special act secures such exemption. By the terms of its original charter the corporation was shielded from taxation up to the limit of $100,000 (Laws of 1866, chap. 350), but later the provision was amended so as to exempt all the real estate of the Association situated on the south-west corner of Twenty-third street and Fourth avenue so long as it should be exclusively used for the authorized purposes. (Laws of 1870, chap. 248.) The question, therefore, is to be determined by the provisions of the Revised Statutes as modified by the consolidation act of 1882 in their application to the city.

The general law, as amended in 1883, exempts " every building erected for the use of a college, incorporated academy or other seminary of learning, and in actual use for either of

such purposes, every building for public worship, every school-house, court-house and jail used for either of such purposes, and the several lots whereon such building so used are situated and the furniture belonging to each of them." The Consolidation Act (§ 827) makes these provisions inapplicable to any such building for public worship and any such school-house or other seminary of learning in the city of New York " unless the same shall be exclusively used for such purposes and exclusively the property of a religious society."

It is not impossible to characterize the Association as a religious society. Its objects, as described in its charter, are "the improvement of the spiritual, mental and social condition of young men in the city of New York." The means to be employed are "sermons, libraries, reading-rooms, social meetings" and other necessary incidents, among which are lectures, concerts and entertainments, bath-room and gymnasium, and instruction in penmanship, arithmetic, bookkeeping and drawing. The building contains above the basement, in which are the gymnasium, bowling alley and bath-room, twenty-two rooms, one only of which is devoted to purposes of public worship, and that not exclusively, since it is also used as a lecture hall. It is, perhaps, just to say that the general and primary purpose of the Association is to train up Christian men; to gather in the youth within its reach from temptation and ignorance and the surroundings of intemperance and crime, and cultivate their minds and hearts with a view to the belief and practice of a religious life. The promoters of the Association undoubtedly saw that some means must be used to draw the young men away from their associates and surroundings and bring them within its influence, and to accomplish this, amusement was blended with instruction and both made subservient to the ultimate end of bringing the membership under distinctively Christian influences. The purpose is excellent and the means adopted commendable; and if the statute allowed us to stop merely with a determination that the corporation is a religious society, we should deem that a reasonable conclusion. But the statute requires more. It provides

that the building must be exclusively used for purposes of public worship, or exclusively used for those of a seminary of learning. I do not understand that either the courts below which adjudged the exemption claimed, or the learned counsel who argued the case at our bar in behalf of the respondent, deemed the corporation a " seminary of learning " within the meaning of the statute. That phrase includes academies, and describes institutions of learning, for either sex, of a similar character. They are subject to the visitation of the regents, are required to report to them, and are permitted to share in the income of the literature fund. (2 R. S. [7th ed.] 1116, §§ 23, 24, 29.) The Young Men's Christian Association was not incorporated as a seminary of learning and does not answer that description. Unless, therefore, it can be truthfully and correctly said that its building is exclusively used for purposes of public worship, it can have no exemption from taxation upon its Bowery Institute. There is no ambiguity in the phrase " public worship." It refers to the usual church services upon the Sabbath, open freely to the public and in which anyone may join. (*Assn. for Colored Orphans* v. *Mayor, etc.*, 104 N. Y. 581.) There are such services held in the building of the Association, but in comparison with the other uses to which that building is put they are the least of all, not, perhaps, in their importance, but in the time which they occupy and the proportion of the building which they require. At all events, it cannot be properly said, upon the facts disclosed, that the building is used exclusively for purposes of public worship. Associations of this character are so useful and so deserving of encouragement and support that a different result would please us better, but we are unable to reach it under the law as it stands.

The judgment of the General and Special Terms should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.