TRUSTEES OF GREEN BAY LODGE, No. 259, OF THE BENEVO-
LENT AND PROTECTIVE ORDER OF ELKS OF AMERICA,
Appellants, vs. CITY OF GREEN BAY and another,
Respondents.

*September 7—September 27, 1904.*

*Taxation: Exemptions: Property of benevolent associations: Elks'
clubhouse.*

The clubhouse and lodge building of a local lodge of the "Benevo-
lent and Protective Order of Elks," designed and used princi-
pally to provide accommodations for the entertainment, amuse-
ment, and refreshment of members of the lodge and their fami-
lies and guests, and maintained by a system of charges to mem-
bers regulated with a view to covering all expenses incident
to the clubhouse features, any profit resulting being paid into
the lodge treasury, is not exempt from taxation under subd. 3,
sec. 1038, Stats. 1898, as being property of a benevolent asso-
ciation, not used for pecuniary profit, within the meaning
of that statute.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge.   *Affirmed.*

Action to set aside taxes and restrain their collection.
Plaintiffs are the trustees of the *Green Bay Lodge of the
Benevolent and Protective Order of Elks,* and as such hold
title to the clubhouse property in the city of Green Bay.   It
was stipulated as a matter of fact that the Benevolent and
Protective Order of Elks of America, of which this is a
local lodge, is a fraternal organization, using its funds for
lodge purposes, with no pecuniary or insurance benefit to
the members of the order.   The order is made up of local
lodges in cities in the United States having a population of
over 5,000, which are under the control of the grand lodge.
The expenses of the grand lodge are provided for by a tax
on the members of the order, charter fees, and by some other
revenues arising from transactions between it and the local
lodges.   These revenues are devoted to the expenses of its

sessions, to salaries, and to the expenses of its general officers. The grand lodge is also authorized to assess a *per capita* tax of not to exceed twenty-five cents on each member for the maintenance of a home for aged and indigent Elks. Such a home has been established and is being maintained in the state of Virginia. The local lodge at Green Bay has made contributions to the support of this home, though the amounts are not shown. The members are taught to be observant of benevolence and charity, and to practice these ennobling attributes in dispensing help to the deserving and needy among its members, and to such other persons as may receive aid at their hands. It appears that considerable sums are contributed by the lodges, and are expended for charitable purposes throughout the country. *Green Bay Lodge* has never contributed for such purposes out of its treasury. On one occasion it contributed a considerable sum for the burial of one of its members, but it was subsequently reimbursed by private parties.

The membership of the local lodges is composed of persons selected by the lodge upon application for membership. Every local lodge provides the method and means for raising funds to defray all necessary expenses incurred in maintaining the lodge. The organizations are voluntary associations, and are under the government of a constitution and the by-laws of the order, and are subject to such regulations as each lodge may adopt, not inconsistent with the object and purposes of the order and the general government imposed by the grand lodge. Every such local lodge must procure a charter from the grand lodge to constitute it a branch of the order, and this charter may be surrendered or forfeited upon the grounds prescribed by the governing body.

The property in question consists of the land owned by the lodge, with a two-story and basement brick clubhouse and lodge building. The basement is devoted to bowling alleys, baths, etc., the first floor to reception and club rooms, billiard,

pool table, and card rooms, a kitchen, a buffet and dining room; and the second floor is used as a lodge room and has the accompanying anterooms and halls. The clubhouse and the lodge rooms and all the contents are the property and are under the control and management of the lodge. The second floor of the building is used for holding the lodge meetings, while the first floor and basement are used for the accommodation of the lodge members and their families for fraternal and social intercourse and as a place of entertainment and amusement, with the usual clubhouse buffet and dining room accommodations for refreshments. This building, with its accommodations, has not been leased or rented. The cost of the real estate, buildings, fixtures, and furnishings amount to about the sum of $27,000.

The revenues of the lodge consist of the initiation fees, the annual membership dues, and the receipts from the use of the bowling alleys, billiard and pool tables, and from the sales of refreshments at the buffet and dining room. This revenue goes into the lodge treasury to defray the expense incident to the maintenance of the lodge and building and all the purposes of the order. No pecuniary profit, by way of payment of any money as dividend, is awarded to any person or member of the order. All charges to members, aside from annual dues, are scaled to meet the needs of the lodge to pay the running expenses and obligations, including principal and interest due on the loans which are secured by a trust deed upon the property. The clubhouse features and privileges are not free to members, but under the control and management of the lodge, many of them are only to be enjoyed for a money consideration, under a fixed scale of prices, and whatever profits, if any, arise therefrom go into the lodge treasury. The privileges of the clubhouse may be extended to guests of the members under the restrictions imposed and at the member's expense. Four or five men who have loaned money to the lodge, and are not members, are

afforded the privileges of the club. They have no voice in the control and management of the property, nor in the affairs of the lodge, and they are treated as guests.

The circuit court held that the property was liable to taxation, and awarded judgment accordingly, from which judgment this appeal is taken.

For the appellants there was a brief by *B. L. Parker* and *W. L. Evans,* and oral argument by *Mr. Parker.* They contended, *inter alia,* that the order of Elks is a "benevolent" association within the meaning of the statute. *St. Joseph's Hospital Asso. v. Ashland Co.* 96 Wis. 636; *Chamberlain v. Stearns,* 111 Mass. 267; *Norris v. Thomson's Ex'rs,* 19 N. J. Eq. 307, 313; *Thomson's Ex'rs v. Norris,* 20 N. J. Eq. 489, 523; *Pell v. Mercer,* 14 R. I. 412; *Estate of Hinckley,* 58 Cal. 457, 509, 510; *Harrington v. Pier,* 105 Wis. 485, 520, and cases cited. It does not matter, even were it a fact, which it is not, that the charity or benevolence of the Elks is limited to its own members. A work may be "charitable" or "benevolent" even though it be limited to a class of persons, if within that class its operation is indiscriminate. *Harrington v. Pier,* 105 Wis. 485, 521; *Indianapolis v. Grand Master,* 25 Ind. 518; *Petersburg v. Petersburg B. M. Asso.* 78 Va. 431; *Hibernian B. Soc. v. Kelly,* 28 Oreg. 173, 30 L. R. A. 167; *M. E. Church v. Hinton,* 92 Tenn. 188, 19 L. R. A. 289; *Savannah v. Solomon's Lodge,* 53 Ga. 93; *State ex rel. Bertel v. Board of Assessors,* 34 La. Ann. 574. The property of such orders as the Masons and other similar fraternal orders, when the other restrictions of the statutes have been complied with, has been uniformly held, under statutes similar to ours, to be exempt as charitable and benevolent organizations. The property in question here is within this rule. *Indianapolis v. Grand Master,* 25 Ind. 518; *Petersburg v. Petersburg B. M. Asso.* 78 Va. 431; *S. C.* 8 Corp. Cas. 484, and notes; *Hibernian B. Soc. v. Kelly,* 28 Oreg. 173, 30 L. R. A. 167; *Fitterer v. Crawford,* 157 Mo. 51, 50 L. R. A. 191; *State*

*ex rel. O'Malley v. Lesueur,* 103 Mo. 253, 13 S. W. 237; *Burdine v. Grand Lodge,* 37 Ala. 478; *Savannah v. Solomon's Lodge,* 53 Ga. 93. The property is not otherwise used for pecuniary profit. It is well settled that an institution does not lose its charitable character and its consequent right of exemption from taxation because some of the recipients of its bounty pay therefor. 12 Am. & Eng. Ency. of Law (2d ed.). 342, and notes; *St. Joseph's Hospital Asso. v. Ashland Co.* 96 Wis. 636; *M. E. Church v. Hinton,* 92 Tenn. 188, 19 L. R. A. 289, and notes. In fact this court has held that even where such association makes a profit in such manner, the proceeds of which are used in the furtherance of its charitable or benevolent work, its property is nevertheless exempt. *St. Joseph's Hospital Asso. v. Ashland Co., supra.* It has frequently been held that the mere incidental use of property, otherwise exempt under such statutes, for secular purposes will not affect the right of exemption. Notes and cases cited in 19 L. R. A. 289 *et seq.*

For the respondents there was a brief by *T. P. Silverwood,* attorney, and *J. H. McGillan,* of counsel, and oral argument by *Mr. Silverwood.* They argued, among other things, that the *Green Bay Lodge of Elks* is not a "benevolent" association within the meaning of subd. 3, sec. 1038, Stats. 1898. In order that the property of the lodge shall be exempt from taxation, the benevolent feature must be the principal object of the association. *Sheren v. Mendenhall,* 23 Minn. 92. While the constitution and by-laws may serve to some extent to show what the order is, the general character of the lodge must be determined from the work it actually does. The word "exclusively" in the statute has a definite meaning, and it was plainly the intention of the legislature to grant the exemption only to that property which is used for the purposes of the association exclusively, and for no other purpose whatever. The lodge itself must use the property for the purposes for which it was organized. *Orr v. Baker,* 4 Ind. 86; *St.*

*James Ed. Inst. v. Salem,* 153 Mass. 185, 26 N. E. 636; *Y. M. C. Asso. v. Mayor,* 113 N. Y. 187; *Vail v. Beach,* 10 Kan. 214. And these purposes must be benevolent if the property is to be exempt from taxation. *Hibernian B. Soc. v. Kelly,* 28 Oreg. 173, 30 L. R. A. 170.

SIEBECKER, J. The question, under the foregoing statement of facts, presents the inquiry: Is this property exempt from taxation under subd. 3, sec. 1038, Stats. 1898? This portion of the statutes declares that:

"Personal property owned by any religious, scientific, literary or benevolent associations, used expressly for the purposes of such associations, and the real property, if not leased or not otherwise used for pecuniary profit, necessary for the location and convenience of the buildings of such association and embracing the same, not exceeding ten acres," shall be exempt from taxation.

It is argued that this local lodge of the Benevolent and Protective Order of Elks of America is such an organization as is contemplated by the statute. Whether the organization is of such a benevolent character we must ascertain from an examination of its purposes and the activities employed to fulfill its objects. The order declares in its constitution:

"The business and objects of the order shall be to aid and protect its members and their families, and to promote friendship and social intercourse, and the subordinate lodges shall provide funds for these purposes."

To fulfill these aims, local lodges are instituted in cities within the United States with a population of at least 5,000. The membership consists of persons selected and approved by the lodge from those who apply for affiliation. This body of members and their families are the persons for whose benefit the clubhouse and lodge room are maintained. The facts disclose that the property is mainly used for the purposes of a clubhouse, providing accommodations for entertainment, amusement, and refreshment at the buffet and dining room.

Such being the principal uses of this property, can they be said to be such as are contemplated by these statutes exempting property from bearing the usual burdens of taxation?

The benevolent purposes of such an organization as the statute contemplates are, in a measure, akin to charitable purposes, in that they bestow benefits through their efforts and means on either its members or the public by assisting the needy or promoting some benefaction by advancing and supporting agencies of a beneficial public nature. While some of the aims of the order are the promotion of benevolence and charity, it is the avowed and obvious purpose of the order to maintain this clubhouse as a suitable place for the members and their families to congregate for entertainment, amusement, and to provide refreshments. The bestowal of these privileges and benefits is not of a benevolent or charitable character. These privileges and benefits which every person may secure for himself and family for a consideration, according to his tastes, wishes, and means, and which the members of this lodge thus provide by co-operation as a body for their mutual advantage, are not of a benevolent character, and serve no such purpose. The learned trial judge pertinently suggests that, if the furnishing of club rooms, facilities for enjoying games, or cards, billiards, pool, and tenpins, and providing the necessaries for a buffet and dining and bath rooms are benevolent purposes within the meaning of the statutes, then any number of men may organize themselves into a corporate body to provide these privileges and benefits for themselves and their guests, and claim the exemption of the statutes. We do not find that the maintenance of the clubhouse is a benevolent purpose within the meaning of the statutes. *St. Joseph's Hospital Asso. v. Ashland Co.* 96 Wis. 636, 72 N. W. 43; *Hibernian B. Soc. v. Kelly,* 28 Oreg. 173, 42 Pac. 3; *Y. M. C. Asso. v. New York,* 113 N. Y. 187, 21 N. E. 86; *Young Men's P. T. & B. Soc. v. Fall River,* 160 Mass. 409, 36 N. E. 57; *People ex rel. Blossom v. Nelson,* 46 N. Y. 477.

Green Bay Lodge No. 259 B. P. O. E. v. Green Bay, 122 Wis. 452.

The statute also requires that the property of a benevolent organization claimed as exempt from taxation shall not be leased nor used for pecuniary profit. It is argued that, since the members of the lodge receive no money by way of dividend or the distribution of any funds of the lodge, but, on the other hand, pay annual dues and the charges necessary to maintain the establishment, there is no use of the property for pecuniary profit. The facts disclose that the clubhouse features are maintained by a system of charges to members under a fixed scale of prices for indulging in these privileges and for purchasers at the buffet and dining room. The charges are regulated with a view to covering all necessary expense incident to conducting these clubhouse features, and if a slight profit results it is paid into the treasury of the lodge. Though this arrangement may not result in paying profits to members by distributing a surplus, yet the transaction may be a pecuniary profit to the lodge, in receiving any surplus over expense, and in a commercial sense the whole scheme may be of considerable pecuniary benefit to the members who are patrons and customers of the clubhouse enterprises, in that they receive the benefit of the reduced cost of these privileges so provided them as patrons and supporters of the clubhouse as a business enterprise.

Upon these grounds we are led to the conclusion that the purposes of the organization in maintaining the clubhouse do not come within the term of benevolent organizations, as contemplated by the statute, and that the uses made of the property in carrying these purposes into effect may and do result in using the property for pecuniary profit. The circuit court ruled correctly in holding that the property was not exempt from taxation.

*By the Court.*—Judgment affirmed.

DODGE, J., took no part.