OPINION OF THE COURT
Stanley L. Sklar, J.
These motions present several issues, some of first impression, involving the interpretation of the “new multiple dwelling” tax exemption statute (Real Property Tax Law, § 421-a). The first issue presented is whether a hospi *607 tal taxpayer, which qualified for tax exemption under the original version of section 421-a, may treat one of its buildings as two structures, one residential and one nonresidential, so that the hospital may concurrently use the exemption for new multiple dwellings and the general charitable use exemption (Real Property Tax Law, § 420-a). I hold that it may not.
The remaining issues, which arise out of a hospital’s desire to switch from the new multiple dwelling exemption to the general charitable use exemption, are (1) whether the prohibition on “concurrent” exemptions contained in the new multiple dwelling statute bars a change of exemption, (2) whether the 1976 amendment to that statute, which prohibits changing exemptions, is retroactive, and (3) whether that 1976 amendment applies to all exemptions. I answer all these questions in the negative.
BACKGROUND
St. Vincent’s Hospital, in order to attract qualified staff, acquired an apartment building (the Staff House) in 1973, under a lease/sublease from the prior owner, a commercial real estate operator and developer. The building contains apartments as well as commercial space and accessory use space consisting of a garage and a laundry facility. On January 15, 1976, St. Vincent’s acquired fee title to the Staff House.
Pursuant to an application initiated by the earlier owner, the Staff House has received the benefit of a special real estate tax exemption under the original version of section 421-a of the Real Property Tax Law (enacted in 1971 as § 421 [L 1971, ch 1207]).
The 1971 version authorized a tax exemption for construction of new multifamily housing units in the City of New York. The exemption diminishes in two-year intervals over a 10-year period, that is, changing from complete exemption of taxes on the increased value of land and improvements to full taxation by the end of the 10-year period.
The purpose of the exemption is basically twofold. First, it was designed to ameliorate the housing shortage affecting the city. Second it was intended to stimulate new *608 construction, thus aiding New York’s ailing construction industry. (Memorandum of Legislative Representative of City of New York, McKinney’s Session Laws of NY, 1971, p 2551.) Enactment was urged because “the City would not actually lose tax revenues since the owner would continue to pay during the period of the exemption the amount of prior taxes on the property, and future tax yields would be greatly enhanced by the improvements.” (Memorandum of Legislative Representative of City of New York, McKinney’s Session Laws of NY, 1971, p 2551.)
St. Vincent’s primarily asks for two items of relief. For the tax year 1976-1977, it seeks summary judgment canceling its tax assessment and requests that it be granted (a) a new multiple dwelling exemption for the residential portion of the Staff House, and (b) a general charitable/hospital use exemption (Real Property Tax Law, § 421, renum § 420, now § 420-a) for the nonresidential portion. For the tax years 1978-1979, 1980-1981, 1981-1982, and 1982-1983, St. Vincent’s seeks summary judgment canceling the tax assessments and granting a full hospital use exemption for the property.[1]
Before turning to the substantive issues, I note that summary judgment is an appropriate vehicle for disposing of the ins„tant motions because St. Vincent’s is seeking only a legal interpretation of the exemption statute. No material factual issues are presented or claimed. (Cf. Hewlett Assoc. v City of New York, 57 NY2d 356.)
1976-1977
For the tax year 1976-1977, St. Vincent’s seeks, in effect, to have the Staff House treated, for the purpose of assessment, as two separate structures, one residential and one nonresidential. St. Vincent’s wants to receive the benefits of the new multiple dwelling exemptions for the residential section, while it receives the hospital use exemption for the nonresidential section.
This claim is untenable in light of the recent holding in Hewlett Assoc. v City of New York (supra).
*609 Hewlett held that the 1975 amendment of the new multiple dwelling exemption statute applies to structures which qualified for exemption under the original version of section 421-a of the Real Property Tax Law (L 1971, ch 1207). The amendment, in essence, provides for a 12% exemption for commercial, community facility, and accessory use space.
Since the statutory scheme of the new multiple dwelling exemption statute includes nonresidential uses and since that statute prohibits taking concurrent exemptions, the Staff House cannot be treated as two structures.
post 1976-1977
A. PROHIBITION AGAINST CONCURRENT EXEMPTIONS
After it received the benefit of the new multiple dwelling exemption for several years, St. Vincent’s determined that a switch to the general charitable use exemption (Real Property Tax Law, § 421, renum § 420, now known as § 420-a) would, for various reasons, be advantageous.
First, as the 10-year period under the multiple dwelling exemption progressed the percentage of that exemption decreased. Second, St. Vincent’s, when it first acquired the Staff House, was unable to rent many of the apartments to its employees. St. Vincent’s therefore rented to outsiders, making the hospital use exemption of little value. As time passed, most of the outsiders were replaced by hospital staff, thus increasing the exemption available under the hospital use provision.
Also, under the exemption for new multiple dwellings, St. Vincent’s could claim only a partial exemption for the commercial space. (Hewlett Assoc. v City of New York, 57 NY2d 356, supra.) Once, however, the hospital decided in 1976 to use the commercial space to house its accounting department, it could claim a total hospital use exemption for that space. (The tax commission concedes that St. Vincent’s, in 1976, decided to use the commercial space for its accounting department.)
The tax commission, while conceding that “St. Vincent’s at all times has been organized and conducted exclusively for hospital purposes”, argues that a provision in the 1971 version of the new multiple dwelling exemption statute, *610 which prohibits the receipt of concurrent exemptions under any other law, mandates denial of the hospital’s request. The commission relies primarily on the 1976 amendment to the statute (L 1976, ch 703, § 2) and its bill jacket, and argues that the prohibition against concurrent exemption forbids changing exemptions.
St. Vincent’s argues that the prohibition merely bars the receipt of benefits under another tax exemption at the same time the taxpayer receives a new multiple dwelling exemption; the prohibition does not forbid the taking of another exemption in lieu of the new multiple dwelling exemption.
St. Vincent’s is clearly correct in its assertion. First, it is a well-known rule of statutory construction that “[cjommon words are to be given their commonly understood meaning unless another meaning is obviously intended” (Matter of Steinbeck v Gerosa, 4 NY2d 302, 308, app dsmd 358 US 39). The plain meaning of “concurrent” is “occurring at the same time”. (Webster’s New Twentieth Century Dictionary [2d ed], 1979.) A “court should not ignore the words of a statute, clear on its face, to reach a contrary result through judicial interpretation” (Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588, 597).
Further, the amendment itself and the bill jacket indicate that a meaning of “concurrent” other than the common meaning was not intended. Part of the 1976 amendment states: “exemption from taxes shall not be availed of concurrently under any other law and that on or after July first, nineteen hundred seventy-six no preliminary certificate of eligibility or certificate of eligibility issued under this section may be rescinded by the local housing agency to avail the property of the benefits of tax exemption or tax abatement for rehabilitation or new construction under the provisions of any other law, but that prior to July first, nineteen hundred seventy-six the local housing agency may rescind such certificates to avail the property of the benefits of tax exemption or tax abatement under the provisions of any other law.” (L 1976, ch 703, § 2; emphasis added.) This passage, which is phrased in the conjunctive, set forth two prohibitions. First, it prohibits concurrent *611 exemptions (i.e., those taken at the same time). Second, it prohibits switching after a specified date.
To interpret the first portion of the above passage as prohibiting switching would render the later portion superfluous. Interpretations having such an effect should generally be avoided. (Hewlett Assoc. v City of New York, 57 NY2d 356, 369, supra.)
In addition, several items in the bill jacket submitted by the tax commission indicate that under the pre-1976 version of the new multiple dwelling exemption statute, owners of property subject to that statute had in fact changed to other exemption programs. (See, e.g., Comments of Counsel to State Bd of Equalization & Assessment, July 14, 1976; Comments of Mayor’s Legislative Representative, July 8, 1976; Legislative Summary, Calendar No. 1843.)
Accordingly, the tax commission’s argument regarding the definition of “concurrent” is without merit.
B. RETROACTIVITY
This holding does not, however, resolve the issue of whether a taxpayer can switch exemptions. The 1976 amendment, set forth above, prohibits changing exemptions after July 1,1976. If this amendment was intended to operate only prospectively, St. Vincent’s could change exemptions. If, on the other hand, retroactivity was intended, St. Vincent’s would be barred from switching.
“[I]t is axiomatic that an amendment will have prospective application only, unless its language clearly indicates that a contrary interpretation is to be applied” (Matter of Deutsch v Catherwood, 31 NY2d 487, 489-490). To reach a contrary result would impose new conditions and “unexpected liabilit[ies] that, if known, might have induced those burdened with [them] to avoid [them].” (Cox v First Nat. Realty & Constr. Corp., 50 AD2d 535, mot for lv to app dsmd 39 NY2d 887; Matter of Deutsch v Catherwood, supra, at p 490.)
The purpose of this rule is the preservation of established rights and duties. The Legislature, in the 1975 amendment to the new Multiple Dwelling Law, recognized the existence of such rights and duties flowing from the *612 exemptions granted under the 1971 version when it prohibited the retroactive application of that amendment to construction begun before January 1,1975 (L 1975, ch 857, § 3). Indeed, St. Vincent’s might not have accepted benefits under the new multiple dwelling exemption had it known that it would be prohibited from switching.
Moreover, if the Legislature had intended a retroactive application of the 1976 amendment, it could have so provided as it did in the 1975 amendment with respect to construction begun on or after January 1,1975 (L 1975, ch 857, § 3). The glaring absence of such a provision leads inexorably to the conclusion that no such effect was intended.
In addition, material in the bill jacket indicates that the 1976 amendment was to operate only prospectively. (See, e.g., Legislative Summary, Calendar No. 1843.)
C. SCOPE OF THE PROHIBITION ON SWITCHING
Even assuming, arguendo, that the 1976 amendment was intended to operate retroactively, the amendment still does not prohibit switching to a hospital use exemption. It merely prohibits changing to a tax exemption or tax abatement “for rehabilitation or new construction” (L 1976, ch 703, § 2).
This interpretation is buttressed by materials contained in the bill jacket. Several items in the jacket specifically state that the 1976 amendment denies applicants use of the new multiple dwelling exemption during construction and the use of other tax exemptions later. (See Budget Report on Bills; Legislative Summary, Calendar No. 1843; Comments of Mayor’s Legislative Representative, July 8, 1976; Comments of Counsel to State Bd of Equalization & Assessment, July 14, 1976.)
One bill jacket item refers to the J51 exemption program (Administrative Code of City of New York, § J51-2.5) which applies to the construction and rehabilitation of certain dwellings. (See comments of Citizen’s Tax Council, Inc., July 7, 1976.) The J51 exemption, as it existed before the 1976 amendment of the new multiple dwelling exemption (unlike the latter exemption) was generally unavailable to the taxpayer until after construction was completed. (Administrative Code, § J51-2.4, subd b; Local *613 Laws, 1975, No. 60 of City of New York.) However, once construction was completed, the J51 exemption and abatement benefits would last for more than the 10-year benefit period available under the new multiple dwelling exemption. So, before the 1976 amendment, some taxpayers were reaping the benefits of the new multiple dwelling exemption during construction and then switching to the J51 program after construction was completed. It is apparent that the Legislature, in promulgating the 1976 amendment, sought to prevent this doubling up of benefits.
It is understandable that the Legislature would not want the taxpayer to switch to exemptions which were granted to achieve substantially similar purposes. This legislative concern has no application in this case in which the policies behind the two exemptions are quite different.
The new multiple dwelling exemption was designed “to encourage the construction of new, generally available, multiple-unit residential buildings” (Hewlett Assoc. v City of New York, 57 NY2d 356, 360-361, supra), without decreasing the city’s tax base in the near term. The exemption would, it was hoped, by encouraging construction, have the long-run effect of increasing the tax base (Memorandum of Legislative Representative of City of New York, McKinney’s Session Laws of NY, 1971, p 2551).
The general charitable (hospital) use exemption (now Real Property Tax Law, § 420-a) reflects a legislative decision that it would be beneficial to the general public to potentially forever forego taxes in order to foster the growth of institutions such as hospitals which “are devoted to the care of the sick and injured, which aid in maintaining public health and which make valuable contributions to the advancement of medical science”. (See People ex rel. Doctor’s Hosp. v Sexton, 267 App Div 736, 741, affd 295 NY 553; cf. Williams Institutional Colored M. E. Church v City of New York, 275 App Div 311, 313, affd 300 NY 716.)
While it is true that the policy of maintaining and eventually increasing the tax base would be frustrated if St. Vincent’s avails itself of the hospital use exemption prior to the expiration of the 10-year period,[2] the policy *614 behind the hospital use exemption must prevail. The Legislature decided long before the enactment of the new multiple dwelling exemption statute that the potential benefits to the citizens of the State derived from the granting of the charitable/hospital use exemption greatly outweigh the loss of potential tax revenues. (See People ex rel. Doctor’s Hosp. v Sexton, 267 App Div 736, affd 295 NY 553, supra; cf. Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508.)
Accordingly, even if the 1976 amendment prohibiting switching of exemptions were retroactive, the amendment would not apply here since the change is to a hospital use exemption.
D. CONCLUSION
Because I hold (1) that concurrent means “at the same time”, (2) that the relevant portion of the 1976 amendment is prospective only, and (3) that even if the 1976 amendment were retroactive, it does not apply to a switch to the hospital use exemption, summary judgment canceling the tax assessment for the years after 1976-1977, and granting a hospital use exemption for those years to the full extent permitted by law is granted.
Accordingly, the matter is remanded, at St. Vincent’s request, to the tax commission for its assessment as to the “portions * * * used for * * * exempt activities”, a remedy held appropriate in Independent Church of Realization of Word of God v Board of Assessors of Nassau County (81 AD2d 579, 581) and Matter of Grace Inst. v Clark (35 AD2d 368, 370-371).

. St. Vincent’s seeks alternative relief in the event that this court denies the latter relief requested. Because I grant the latter relief, the request for alternate relief will not be treated.

. No one seriously contends that after the expiration of the 10-year period St. Vincent’s could not avail itself of the hospital use exemption, although those benefits would run counter to the new multiple dwelling exemption policy of increasing the city’s tax base.